```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,       )   CR. NO. 10-00333 SOM-KSC
                                )
          Plaintiff,            )
                                )   ORDER DENYING DEFENDANTS'
     vs.                        )   MOTION TO DISMISS INDICTMENT
                                )
CHARLES O. FINCH,       (01)    )
GARY M. CANTEEN,        (02)    )
ASSAD JOHN RAMIN,       (03)    )
TAHIR RAMIN             (04)    )
AZ CORPORATION          (05)    )
                                )
          Defendants.           )
_____ )
```

ORDER DENYING DEFENDANTS' MOTION TO DISMISS INDICTMENT

I.      INTRODUCTION.

Defendants Assad John Ramin, Tahir Ramin, and AZ Corporation (collectively, "the Ramins"), along with two other defendants, are charged with various offenses relating to an alleged conspiracy to bribe military officers and launder money. The Ramins also face bribery charges in a separate federal case in the Northern District of Illinois (the "Chicago case") involving an allegedly similar scheme between the Ramins and other military officials.

The Ramins now move to dismiss the Indictment on the grounds of prosecutorial misconduct and grand jury abuse. The Ramins argue that the Government used the Hawaii grand jury proceedings to bolster the Chicago case against them. The court denies the motion to dismiss.

II.     FACTUAL BACKGROUND.

Defendants Assad John Ramin and Tahir Ramin own AZ Corporation, which they describe as a provider of transportation and logistical services to the United States military in Afghanistan. Defs. Assad John Ramin, Tahir Ramin, & AZ Corp.'s Mot. to Dismiss Indictment ("Mot."), ECF No. 44, at 4. The Government asserts that, in 2004, the Ramins bribed two other defendants, Sergeant Charles Finch and Sergeant Gary Canteen, by paying them $50,000 in exchange for Finch's assistance in securing the award of a Department of Defense contract to AZ Corporation. See Indictment, June 8, 2010, ECF No. 2, ¶¶ 10-29. The Indictment charges the various Defendants with conspiracy to commit bribery, bribery, conspiracy to commit money laundering, and money laundering.

The Ramins now move to dismiss the Indictment, alleging prosecutorial misconduct.[1] According to the Ramins, the Government improperly used the grand jury proceeding in this case to gather evidence for the Chicago case. Mot. at 11-12. The Ramins allege that the prosecutors handling this case are also prosecuting the Chicago case. Mot. at 15-16. The Ramins assert that these prosecutors' misconduct in the Chicago case included

---

[1] The Defendants have moved separately to dismiss the Indictment on the ground that it fails to state an offense. See Motion to Dismiss Counts 1, 2, 4, and 6 for Failure to State Offenses Against the United States, ECF Nos. 47, 59.

the improper detention of material witnesses from Afghanistan for fifteen months and the intimidation of certain other defense witnesses. Mot. at 15-19 & Exhs. C, F.

According to the Ramins, the Government issued a subpoena to the Ramins' brother, Nasir Ramin, in the Chicago case, withdrew the subpoena, then reissued it a year later in the Hawaii grand jury proceedings. Mot. at 20. The Government also (unsuccessfully) sought to subpoena to Hawaii the Ramins' sister, Shaima Ramin, who owns a company that was also indicted in the Chicago case. Mot. at 20-21. The Ramins assert that the Government had evidence relating to the indicted offenses as early as five years before the Indictment was filed, and that the Government's decision to delay bringing the charges in this case will ultimately cause the failure of AZ Corporation. Mot. at 15, 21-22.

The Ramins further contend that the Government failed to present exculpatory evidence to the grand jury, including evidence that the Ramins had refused to make the $50,000 payment, and that the Ramins had participated in an objective ranking system of contractors that prevented the award of contracts based on bribery. Mot. at 22-23. The Ramins assert that the Government failed to indict another Afghan company that, like AZ Corporation, was allegedly extorted into making payments to United States military officials. Mot. at 23-24.

Finally, the Ramins contend that the prosecutors violated various Department of Justice guidelines during the grand jury proceedings by: (1) effectively precluding John Ramin from testifying on his own behalf by scheduling him only for a date they knew he could not appear on; (2) refusing to permit presentation of exculpatory evidence that the reason the Ramins paid bribes was that they were being extorted by military officials; (3) subpoenaing the Ramins' siblings; and (4) indicting the Ramins in Hawaii despite having already indicted them in Chicago.  See Mot. at 24-32 & Exhs. E, H-L.

Based on the alleged misconduct above, the Ramins argue that the Indictment should be dismissed.  Mot. at 30.  They also ask for an order releasing to them transcripts of all of the Hawaii grand jury proceedings, and for an order requiring the Government to disclose any other misconduct investigations involving the prosecutors in this case.  Mot. at 30-31.

III.    ANALYSIS.

    A.   The Allegations of Prosecutorial Misconduct Are Not Sufficient to Justify Dismissal of the Indictment.

The Ramins argue that the court should dismiss the Indictment because the Government committed outrageous misconduct in obtaining the Indictment from the grand jury.  An indictment may be dismissed based on either: (1) "outrageous government conduct," if the conduct rises to the level of a due process

violation; or (2) "conduct [that] does not rise to the level of a due process violation," but that the court determines justifies dismissal under the court's "supervisory powers." United States v. Chapman, 524 F.3d 1073, 1084 (9th Cir. 2008). The Ninth Circuit has recognized that the goal under either theory is to protect the integrity of the judicial process. United States v. Cederquist, 641 F.2d 1347, 1352 (9th Cir. 1981). In either event, this court's ability to review grand jury proceedings is limited by the grand jury's constitutional independence.

Questions of outrageous government conduct are questions of law for this court to decide. See United States v. Wylie, 625 F.2d 1371, 1378 (9th Cir. 1980). Rule 12(b) of the Federal Rules of Criminal Procedure allows this court to decide a pretrial motion in a criminal case that "can be determined without a trial of the general issue." As this includes a motion alleging a defect in the institution of the prosecution and a motion alleging defects in the indictment, the present motion to dismiss based on prosecutorial misconduct falls within this court's authority. See Fed. R. Crim. P. 12(b)(2)-(3); see also Cederquist, 641 F.2d at 1352 ("An indictment may be dismissed for prosecutorial misconduct before the grand jury.").

While the court's power to dismiss an indictment on grounds of prosecutorial misconduct is frequently discussed, it is rarely invoked. United States v. De Rosa, 783 F.2d 1401, 1404

(9th Cir. 1986).  "Because it is a drastic step, dismissing an indictment is a disfavored remedy."  United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985).

> 1.   Dismissal for Due Process Violation.

A court may dismiss an indictment based on a constitutional error that interferes with the grand jury's integrity and ability to exercise its independent judgment.  See United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992); De Rosa, 783 F.2d at 1405.  Structural errors may so infect the grand jury proceedings that they are rendered fundamentally unfair.  See Isgro, 974 F.2d at 1094; see, e.g., Vasquez v. Hillery, 474 U.S. 254, 260-64 (1986) (racial discrimination in selection of grand jury); United States v. Basurto, 497 F.2d 781, 785-86 (9th Cir. 1974) (government knowingly presented perjured testimony to the grand jury).  Constitutional error may also be found when a history of prosecutorial misconduct is demonstrated that is so "systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."  Isgro, 974 F.2d at 1094.

In their moving papers, the Ramins do not even argue that there has been a violation of due process.  The court therefore turns to the second ground under which it may dismiss the Indictment.

>    2.   Dismissal Pursuant to the Court's Supervisory Powers.

Even if the government's conduct does not rise to the level of a due process violation, this court may draw on its supervisory powers to dismiss an indictment.  See United States v. Struckman, 611 F.3d 560, 574 (9th Cir. 2010); Isgro, 974 F.2d at 1094.  The Ninth Circuit has recognized three "legitimate reasons" for courts exercising supervisory powers to dismiss indictments: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct."  United States v. Matta-Ballesteros, 71 F.3d 754, 763 (9th Cir. 1995); see, e.g., Chapman, 524 F.3d at 1085 (indictment properly dismissed when prosecution failed to produce hundreds of documents, failed to record what had or had not been disclosed, and affirmatively misrepresented to the court that it had fully complied with production obligations).

Before a court may draw on its supervisory powers to dismiss an indictment, however, the court must determine that the defendant suffered "substantial prejudice."  See Chapman, 524 F.3d at 1087; Isgro, 974 F.2d at 1094; United States v. Hernandez, 2007 WL 2460761, at *2 (D. Haw. Aug. 24, 2007).  Dismissal of an indictment is appropriate "only if it is

established that the violation[s] substantially influenced the grand jury's decision to indict" or when "there is grave doubt that the decision to indict was free from the substantial influence of such violations." <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 256 (1988) (internal quotation marks omitted).

The Ramins' motion rests primarily on their argument that the Indictment should be dismissed because the Government brought the Indictment for an improper purpose. Specifically, they argue, the Government's true purpose in bringing the Indictment was to gather evidence for or otherwise bolster its case against the Ramins in Chicago. Mot. at 11-12. At the hearing, the Ramins argued that the "totality of the circumstances" suggests that the Indictment was brought under suspicious circumstances.

The court does not agree that the facts and circumstances presented suggest that the grand jury proceedings in this case have been tainted. Instead, the accusations of misconduct appear to be largely grounded in counsel's own suspicions about the Government's motives and strategy in the timing of this Indictment. <u>See, e.g.</u>, Mot. at 15 (arguing that the Indictment is "suspicious" because it was brought on "the eve of trial" in the Chicago case). Such conjecture, without facts that suggest actual misconduct, is not enough to cause this court

to take the "drastic step" the Ramins seek. See Rogers, 751 F.2d at 1076.

The motion argues at length that the prosecutors in this case, who are also handling the Chicago case, engaged in misconduct in the Chicago case. Mot. at 15-19 & Exhs. C, F, G. The Ramins fail to explain how misconduct in the Chicago case--even if committed by the same prosecutors--amounts to misconduct with respect to proceedings before the Hawaii grand jury. If the Ramins believe the Government has mistreated witnesses in the Chicago case, they may move for appropriate sanctions in the Northern District of Illinois. Similarly, if the Ramins feel that the Government will seek to improperly introduce evidence relating to the Hawaii Indictment in the Chicago case, they may move for exclusion there.

The Ramins also fail to demonstrate that the Government improperly subpoenaed the Ramins' brother and sister, Nasir and Shaima Ramin. The Ramins do not dispute that the Chicago case and the Hawaii case are based on different crimes. Even if Nasir and Shaima Ramin were also subject to subpoena in the Chicago case, the Ramins do not assert that Nasir and Shaima possessed information relevant solely to that case.

The Government's decision not to prosecute a "similarly situated Afghan company in Hawaii," Mot. at 23, does not suggest misconduct in this case, given prosecutors' broad charging discretion. See United States v. Williams, 504 U.S. 36, 48

(1992) (prosecutor's ability to seek indictment from grand jury is independent of any judicial authorization); United States v. Edmonson, 792 F.2d 1496, 1497 (9th Cir. 1986) (explaining that, under our system of separation of powers, the Constitution grants to the Attorney General and the United States Attorneys the decision whether to prosecute).

The Ramins' objections to the presentation of evidence before the grand jury are similarly unfounded.  See United States v. Fritz, 852 F.2d 1175, 1178 (9th Cir. 1988) (person under investigation has no right to testify before grand jury); see also Williams, 504 U.S. at 55 (government need not present exculpatory evidence to grand jury).  Finally, the Ramins lack standing to object to the Government's failure to follow its own internal guidelines.  See In re Grand Jury Proceedings (Chesnoff), 13 F.3d 1293, 1296 (9th Cir. 1994) (explaining that Department of Justice guidelines do not establish substantive or procedural rights).

Accordingly, the court declines to exercise its supervisory powers to dismiss the Indictment.

        B.    The Release of Grand Jury Transcripts Is Not Warranted in This Case.

The Ramins have requested grand jury transcripts.  As they have failed to demonstrate a "particularized need" for that information, the request is denied.

Grand jury proceedings are presumptively secret. See Fed. R. Crim. P. 6(e). Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure, however, authorizes disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

With respect to allowing discovery of grand jury transcripts, the Ninth Circuit has cautioned against allowing "across the board fishing expeditions." United States v. Kim, 577 F.2d 473, 478 (9th Cir. 1978). The Ninth Circuit has stated that "[a] trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists which outweighs the policy of secrecy." United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (internal quotation marks and alteration omitted). Particularized need must be based on more than mere speculation, and the burden is on the defendant to show that disclosure of grand jury transcripts is appropriate. See id. (citing Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959)).

To obtain discovery of grand jury transcripts based on prosecutorial misconduct, the Ramins must show that the alleged instances of misconduct would compel dismissal of the Indictment. See United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985) (rejecting a claim that a defendant showed particularized need

11

when "[t]he claimed misconduct would not have compelled the dismissal of the first superseding indictment"). Because the Ramins fail to make such a demonstration, they are not entitled to the grand jury transcripts.

As discussed above, the Ramins' claims of prosecutorial misconduct are wholly unsubstantiated and speculative, and therefore fail to supply the particularized need required to outweigh the policy of grand jury secrecy. The Ramins speculate that the Indictment in this case must have been for an improper purpose because of its timing and because the Government did not present the Ramins' testimony or other exculpatory evidence, and that the Government is trying to force them to plead guilty in the Chicago case by burdening their family with subpeonas and by distracting the family from its business activities by dragging out this case. Such arguments, which rely entirely on supposition and guesswork, do not demonstrate a particularized need for the grand jury transcripts.

The Ninth Circuit rejected a similarly speculative argument in United States v. Ferreboeuf, 632 F.2d 832 (9th Cir. 1980). In that case, the defendant sought discovery of grand jury transcripts, asserting that there must have been an impropriety in the proceedings "based only on the speed with which the indictment was returned." Id. at 835. The Ninth Circuit ruled that such "unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the particular

12

need required to outweigh the policy of grand jury secrecy." Id. (internal quotation marks omitted). The Ramins' speculation that they have been charged with additional crimes in this jurisdiction solely to disadvantage them in the Chicago case is unavailing. The Government is charging different crimes in Chicago and in this case. Other than the Ramins' speculation, nothing in the record indicates that this case was brought for an improper purpose.

The court recognizes that allowing the Ramins to obtain grand jury transcripts might allow them to raise arguments beyond those raised in the motion. However, the Ninth Circuit requires more than mere speculation to justify disclosure of grand jury transcripts. See Walczak, 783 F.2d at 857 (a defendant who did not allege specific facts supporting his motion was only speculating and thus was not entitled to grand jury transcripts). The Ramins' speculation does not justify discovery of the grand jury transcripts.

        B.   The Request for Discovery of Prior Prosecutorial Misconduct is Denied.

The Ramins seek discovery of prior prosecutorial misconduct by the prosecutors in this case. That request is denied. The Ramins have provided no basis for ordering the disclosure of such information in this case, even if it did exist. Accordingly, the request for discovery of prior prosecutorial misconduct is denied.

IV.     CONCLUSION.

For the foregoing reasons, the court denies the Ramins' motion to dismiss.  The court declines to conduct an evidentiary hearing given the insufficiency of the Ramins' allegations, which do not establish that the Ramins' motion would be assisted by such a hearing.  The court denies the Ramins' request for transcripts related to the grand jury proceedings and for materials related to other investigations into misconduct by the prosecutors involved in this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 24, 2010.



　　　　　　　　　　　　　　 /s/ Susan Oki Mollway
　　　　　　　　　　　　　　Susan Oki Mollway
　　　　　　　　　　　　　　Chief United States District Judge

United States of America v. Finch, et al., Criminal No. 10-00333 SOM/KSC; ORDER DENYING DEFENDANTS' MOTION TO DISMISS INDICTMENT.

14