```
             IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,      )   CR. NO. 10-00333 SOM-KSC
                               )
          Plaintiff,           )
                               )   ORDER DENYING DEFENDANT'S
     vs.                       )   MOTION TO DISMISS FOR FAILURE
                               )   TO STATE OFFENSES AGAINST THE
CHARLES O. FINCH,        (01) )    UNITED STATES
GARY M. CANTEEN,         (02) )
ASSAD JOHN RAMIN,        (03) )
TAHIR RAMIN,             (04) )
AZ CORPORATION           (05) )
                               )
          Defendants.          )
_____)
```

ORDER DENYING DEFENDANT'S MOTION TO DISMISS
FOR FAILURE TO STATE OFFENSES AGAINST THE UNITED STATES

I.      INTRODUCTION.

On June 8, 2010, a grand jury returned an eighteen-page, six-count Indictment against five Defendants. The Indictment charges Charles O. Finch and others with having conspired to conceal and disguise a $50,000 bribe and with having falsely explained the nature of the funds.

On July 7, 2010, Finch filed a motion to dismiss the Indictment on two grounds: (1) failure to state offenses against the United States in Counts 1 and 2, and (2) failure to sufficiently allege the money laundering offenses in Counts 4 and 6, given the need to predicate them on bribery proceeds that are "profits." Joinders in the motion have been filed by Defendants Gary M. Canteen, Assad Ramin, Tahir Ramin, and AZ Corporation.

With respect to the first ground, Finch argues that, because his alleged conduct occurred largely in Afghanistan, he cannot be prosecuted in the United States. With respect to the second ground, Finch argues that the term "proceeds," as used in the money laundering statute, must be read to mean "profits," not "receipts," and that there are no bribery profits that can support the money laundering counts. The court denies the motion. Counts 1 and 2 allege acts prohibited by the criminal statutes of the United States, and any problems that may exist with Counts 4 and 6 should be addressed during or after trial, not by a pretrial dismissal.

II.     FACTUAL BACKGROUND.

Finch was the Noncommissioned Officer in Charge of Operations Support at Bagram Airfield, a United States military base in Afghanistan. Finch was allegedly responsible for evaluating and recommending line haul services for the transporting of supplies from Bagram to other operating bases in Afghanistan. Canteen was Finch's roommate at Bagram and served as First Sergeant. During the relevant period, Canteen co-owned a t-shirt and souvenir shop named Da Spot, Inc. ("Da Spot"), in Honolulu, Hawaii. John Ramin and Tahir Ramin are the purported owners and operators of AZ Corporation ("AZ"), a military contracting business that provides line haul transportation.

The Ramin brothers and AZ allegedly gave Finch $50,000 in exchange for his recommendation and facilitation of the award of a line haul service agreement to AZ.  The Ramin brothers allegedly deposited money in Canteen's Hawaii business bank account, and Canteen allegedly transferred about half the money to Finch.  All Defendants allegedly used a coordinated cover story to falsely explain the nature, location, source, ownership, and control of the funds.

The Indictment charges Finch with conspiracy to commit bribery, bribery, conspiracy to commit money laundering, and money laundering.

In Count 1, the Indictment charges that, from at least September 2004 to April 2009, Finch conspired to "defraud the United States by impairing, impeding, and defeating the lawful functions of the DOD (Department of Defense)."  Indictment ¶ 9(a).  Defendants also allegedly conspired to commit bribery by "corruptly demanding, seeking, receiving, accepting and agreeing to receive and accept things of value" in exchange for "being influenced in the performance of official acts, and in return for being induced to do and omit to do acts in violation of official duty."  Id. ¶ 9(b).

In Count 2 of the Indictment, Finch is charged with "recommending and facilitating the award of DOD line haul" and

"allowing AZ to collect payment therefrom," in violation of 18 U.S.C. § 201(b)(2)(A) and (C). Id. ¶ 33.

In Counts 4 and 6, Finch is charged with conspiracy to launder money and money laundering, respectively. Specifically, Finch is charged with conspiracy "to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce" with the knowledge that "the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds". Id. ¶¶ 37, 38.

III.     LEGAL STANDARD.

This motion to dismiss for failure to state an offense is governed by Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. See United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002). Rule 12(b)(3) allows the court to hear a claim that "the indictment or information fails to invoke the court's jurisdiction or to state an offense." In ruling on such a pre-trial motion, the district court is bound by the four corners of the indictment. United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

To withstand a motion to dismiss for failure to state an offense, an indictment must allege that the defendant performed acts that, if proven, would constitute a violation of the law under which he has been charged. Boren, 278 F.3d at 914.

An indictment need only be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  <u>United States v. Awad</u>, 551 F.3d 930, 935 (9th Cir. 2009), recently explained the standard for determining when this standard is met:  An indictment is sufficient if it contains "the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." <u>United States v. Alber</u>, 56 F.3d 1106, 1111 (9th Cir. 1995) (internal quotation signals omitted).

On consideration of the motion to dismiss, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged.  <u>Boren</u>, 278 F.3d at 914.

IV.     <u>ANALYSIS.</u>

    A.  Counts 1 and 2 Allege Acts Within the Scope of <u>Federal Criminal Law.</u>

Finch argues that Counts 1 and 2 fail because Congress did not authorize the extraterritorial application of 18 U.S.C. §§ 371, 201(b)(2)(A) and (B), and 1956(h) and (a)(1)(B)(I). According to Finch, a statute that is silent as to whether it applies to conduct abroad is inapplicable to acts outside the United States.

Finch views Count 1 and 2 as predicated largely on conduct that allegedly occurred in Afghanistan.  Finch's

5

extraterritoriality argument ignores the specific allegations in Counts 1 and 2. Those counts refer to numerous acts allegedly occurring in the United States. The Indictment alleges that John and Tahir Ramin sent a $50,000 bribe payment to a bank account in Hawaii. Indictment ¶¶ 19, 21. Once the money was received in Hawaii, Canteen allegedly withdrew some of the money and funneled it to Finch, id. ¶¶ 26-28, a public official. Id. ¶¶ 24, 29. The line haul agreement in question was solicited and awarded by the United States Department of Defense and paid for with funds from the United States Treasury. Id. It is, therefore, not the case that the crimes alleged in Counts 1 and 2 occurred entirely outside of the United States. As the Ninth Circuit held in United States v. Endicott, 803 F.2d 506, 508 (9th Cir. 1986), if an overt act in furtherance of a conspiracy occurs in this country, then the conspiracy falls within the jurisdiction of the United States. Accord United States v. Moncini, 882 F.2d 401, 403 (9th Cir. 1989)("Jurisdiction is proper if the offense or part of the offense occurred within the United States.").

      Even if this court accepted Finch's description of the crimes charged as occurring abroad, dismissal of Counts 1 and 2 would be unwarranted. That indeed is what the United States District Court for the Northern District of Illinois concluded in a related case. See Mem. and Order in United States v. West, No. 1:08-cr-00669, ECF No. 526 (N.D. Ill. June 23, 2010). In West,

Defendants John Ramin and Tahir Ramin brought a motion to dismiss on the ground that the Indictment was premised on conduct occurring outside the United States. The case involved allegations of conspiracy, bribery, and mail fraud in a scheme similar to the one alleged in the present case. The West court denied the motion to dismiss, concluding that the statutes Defendants were charged under applied extraterritorially.

Finch urges this court to reach a different result by reading Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010), as overruling United States v. Bowman, 260 U.S. 94 (1922), which long ago held that a criminal statute can be applied to acts outside the United States if the character of the offense supports the "natural inference" that an extraterritorial location "would be a probable place for its commission." Bowman, 260 U.S. at 99.

The defendants in Bowman were indicted for criminal conduct while operating a ship for the United States Shipping Board Emergency Fleet Corporation. The defendants purported to purchase 1,000 tons of fuel oil while recovering only 600 tons, and then allegedly kept the extra cash for themselves. These alleged acts occurred outside of the United States. The Supreme Court approved the extraterritorial application of that statute that made it a crime to conspire to defraud the United States or any corporation in which the United States was a stockholder.

The United States owned all the stock in the United States Shipping Board Emergency Fleet Corporation. The criminal statute in issue did not state that it applied outside the United States. Id. at 95, 98 n.1.

The Bowman Court recognized that Congress's failure to affirmatively state that a statute is to be applied extraterritorially typically indicates a contrary intent. Id. at 98. However, the Court cautioned that "the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated." Id.

Reviewing examples of statutes that implicitly intended to cover acts occurring outside the United States, the Bowman Court referred to laws against the bribing of a United States officer. The Court noted that such crimes could be tried in the United States, even if the acts of bribery occurred overseas, stating, "It is hardly reasonable to construe this [statute] not to include such offenses when the bribe is offered to a[n] . . . army or a naval officer in a foreign country or on the high seas, whose duties are being performed there, and when his connivance at such fraud must occur there." Id. Accord United States v. Walczak, 783 F.2d 852 (9th Cir. 1986) (holding that Congress

proscribed bribery of any public official, regardless of where the conduct takes place).

The statutes in issue in the present case appear to contemplate coverage of acts occurring overseas. In 18 U.S.C. §§ 201(b)(2)(A) and (C), Congress made crimes out of acts of bribery and fraud committed against the United States through "an officer . . . acting for or on behalf of the United States, or any department, agency or branch of Government thereof." 18 U.S.C. § 201(a)(1). Limiting these statutes to domestic enforcement, given the number of troops stationed abroad, would "curtail the scope and usefulness of the statute[s] and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries . . . ." See Bowman, 260 U.S. at 98.

Finch argues that Morrison overrules Bowman. In Morrison, the Supreme Court, finding no clear congressional intent to apply § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), to overseas activities, held that the civil provision applied only to the purchase or sale of a security listed on an American stock exchange, or the purchase or sale of any other security in the United States. Morrison, 130 S. Ct. at 2887-88.

Morrison does not, however, hold that all federal statutes lacking express language authorizing extraterritorial application must necessarily apply only to acts occurring entirely in the United States. In Love v. Associated Newspapers,

Ltd., 611 F.3d 601 (9th Cir. 2010), the Ninth Circuit addressed the extraterritoriality of the Lanham Act, which deals with trademark issues.  While acknowledging Morrison in a footnote, the Ninth Circuit concluded that the sweeping language of the Lanham Act "contrasts so readily with the language in the Securities Exchange Act" that extraterritorial application of the Lanham Act survived Morrison.  Love, 611 F.3d at 613, n.6.  Similarly, the language of the conspiracy and bribery laws in this case are broader in scope than the Securities Exchange Act provision in Morrison.  The statute at issue in Morrison concerned "transactions in securities listed on domestic exchanges and domestic transactions in other securities." Morrison, 130 S. Ct. at 2884.  Morrison neither explicitly nor implicitly overrules Bowman, which counsels courts to examine statutes with an eye toward whether Congress intended to protect the Government from crimes wherever perpetrated.  This court concludes that Counts 1 and 2 allege crimes that fall within the scope of the statutes cited.

        B.    Pretrial Dismissal of Counts 4 and 6 Is Not Warranted.

Finch concedes that the money laundering statute, 18 U.S.C. § 1956, applies to extraterritorial conduct.  The statute states:

> There is extraterritorial jurisdiction over the conduct prohibited by this section if:
> (1) the conduct is by a United States citizen or, in the case of a non-United States

>           citizen, the conduct occurs in part in the
>           United States; and (2) the transaction or
>           series of related transactions involves funds
>           or monetary instruments of a value exceeding
>           $10,000.

18 U.S.C. § 1956(f).

Finch argues that Counts 4 and 6, charging conspiracy to launder money and substantive money laundering, respectively, nevertheless fail.

In addressing Finch's arguments concerning Counts 4 and 6, the court is without the full benefit of the adversary system. The Government's Opposition Memorandum barely mentions these arguments. Except for a footnote on page 15 of its Opposition Memorandum that relies on a statutory amendment not in effect at the time of the alleged offense conduct, the Government brief skips over those arguments entirely!  Even in the footnote, the Government is in error in describing Finch as arguing "that Counts 4 and 6 must be dismissed because the money deposited in Hawaii was proceeds of the bribery offense."  Opp. Memo. at 15 n.11.  In reality, Finch is arguing that "Counts 4 and 6 must be dismissed because the alleged transactions involving $50,000 did <u>not</u> involve 'proceeds' of bribery."  Memo. in Support of Motion at 17 (emphasis added).  At the hearing on the present motion, the Government provided little additional analysis of this particular subject.  Notwithstanding this situation, the court declines to dismiss Counts 4 and 6, but not by making any determination on the merits of Finch's arguments.  Even without

vigorous opposition, Finch cannot prevail unless he establishes that dismissal is warranted as a matter of law.  Finch does not do this.

This court view Finch's arguments as more properly addressed in later proceedings than by pretrial dismissal, and denies the motion insofar as it relates to Counts 4 and 6 on that procedural ground.

The court understands Finch to be arguing that Counts 4 and 6 fail because the alleged money laundering transaction involving $50,000 does not involve the "proceeds" of bribery. One element the government must prove to establish money laundering is that the defendant participated in a financial transaction involving the "proceeds" of specified unlawful activity.  In United States v. Santos, 553 U.S. 507, 511-12 (2008), the Court defined "proceeds" to mean "profits."  The rationale driving the plurality was what it referred to as a "merger problem" that arises when a money laundering count increases the sentence for the very same behavior constituting the underlying specific unlawful activity.  Id. at 513-14.  In Santos, equating proceeds with gross receipts would have turned nearly every violation of an illegal lottery statute into a simultaneous violation of the money laundering statute.

Unfortunately, application of Santos has proven difficult.  United States v. Van Alstyne, 584 F.3d 803, 811 (9th Cir. 2009).  Appellate courts are divided as to how to interpret

12

Santos. See United States v. Brown, 553 F.3d 768, 783 (5th Cir. 2008)("The precedential value of Santos is unclear outside of the narrow factual setting of that case, and the decision raises as many issues as it resolves for the lower courts."); United States v. Demarest, 570 F.3d 1232 (11th Cir. 2009); United States v. Yusuf, 536 F.3d 178 (3d Cir. 2008). Statutory amendments not in effect at the time of Finch's alleged conduct have resolved much of the confusion.

The Ninth Circuit reads Santos as holding that "proceeds" means "profits" if viewing "proceeds" as mere "receipts" would present a merger problem. Van Alstyne, 584 F.3d at 814. In Van Alstyne, the underlying illegal activity was mail fraud, arising from the defendant's operation of a Ponzi scheme. The transactions that gave rise to the money laundering charges involved transfers of funds for the purpose of making distribution payments to individual investors and refunding the entire outlay made by one investor. Id. at 809. The first two money laundering transactions consisted of distributions to individual investors and presented the merger problem because "[t]he very nature of the scheme . . . required some payments to investors for it to be at all successful." Id. at 815. However, the third transaction was not central to the scheme because it occurred after the Ponzi scheme began to unravel and refunded an investor's entire outlay. Essentially, the Court found that

13

refunds to investors did not advance the core scheme to defraud. Id. at 815-16.

  The issue before this court is whether this case presents a merger problem. Count 4 charges a conspiracy to commit money laundering. The crime is the agreement itself to launder bribery proceeds. Tracking the language of the 18 U.S.C. § 1956, the Indictment charges that Defendants knowingly and unlawfully conspired to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce "which in fact involved the proceeds of specified unlawful activity." Indictment ¶ 37. Like Count 1, which charges a bribery conspiracy, Count 4 lists as part of the "Manner and Means of The Conspiracy" the allegation that Canteen withdrew money for a designated bank account and remitted a portion to Finch. Id. ¶¶ 14, 42.

  Count 6, the substantive money laundering count, charges Finch and Canteen with having conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce "which in fact involved the proceeds of specified unlawful activity," knowing that the transaction "was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity." Id. ¶ 48. Count 6 details the alleged

14

transaction as follows: "to wit, CANTEEN having purchased a $24,000 official bank check numbered 07105167 from the First Hawaiian Bank, made payable to FINCH, did transfer that check to FINCH, which in fact involved the proceeds of specified unlawful activity, to wit, bribery." The time frame alleged for the money laundering is "[i]n or about September 2004." Id. ¶ 48. Despite the Government's description of Count 6 as involving "downstream" transactions following receipt of the alleged bribe money, the time frame of Count 6 falls within the time frame alleged for the bribe itself. Thus, Count 2 alleges that, "[b]eginning at least in or about September 2004 and continuing through at least in or about February 2005, . . . CHARLES O. FINCH, as a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept things of value, that is, $50,000 . . . ." Id. ¶ 33. Finch thus has a basis for arguing that the very acts cited in Count 2 form the basis of Count 6 and that the Indictment arguably presents the merger problem discussed in Santos.

However, even if there is a merger problem (a matter this court need not and does not decide here), it does not necessarily follow that pretrial dismissal is the remedy. The merger problem has sometimes been analyzed by courts using the term "multiplicitous counts." Multiplicitous counts in essence repeat the same charge. See, e.g., United States v. Morris, 827 F.2d 1348, 1351 (9th Cir. 1987) (noting that the different counts

15

against a defendant were not multiplicitous if each count required proof of a fact that the other did not, and on that ground rejecting a defendant's argument "that his convictions were multiplicitous because the offenses charged in counts 3 and 4 and in counts 1 and 2 of the indictment merge").

The United States Supreme Court, in <u>Ball v. United States</u>, 470 U.S. 856 (1985), reviewed two firearms statutes that it said had "partial redundancy." One statute made it a crime for a convicted felon to receive a firearm shipped in interstate commerce, while the other made it crime to possess such a firearm. While acknowledging that a prosecutor had the discretion to prosecute a person simultaneously for both offenses even though they were based on the same conduct, the Court said that the person could not be convicted and punished for both offenses. <u>Id.</u> at 859-61. The Court found that the cure for the multiplicity problem was for the district court "to exercise its discretion to vacate one of the underlying convictions" and to sentence the defendant on only one of the counts. <u>Id.</u> at 864. <u>Santos</u> itself did not involve a pretrial dismissal scenario.

In the present case, this court sees no reason to curtail prosecutorial discretion through a pretrial dismissal of any count. If Finch is convicted of Counts 1, 2, 3, and 4, and if at the time of sentencing Finch establishes that the charges are multiplicitous, this court will vacate the merged

convictions.  This is the procedure that <u>Ball</u> appears to this court to permit.

V.        <u>CONCLUSION.</u>

For the foregoing reasons, the court denies the motion to dismiss.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 30, 2010.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>United States of America v. Finch, et al.</u>, Criminal No.10-00333 SOM/KSC; Order Denying Defendant's Motion to Dismiss Indictment for Failure to State Offenses Against the United States.